## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ANDREW JONES

                 Petitioner,

   v.

Thomas McGinley, Superintendent, SCI Coal Township

and

The District Attorney of the County of Philadelphia

and

The Attorney General of the Commonwealth of Pennsylvania.

               Respondents.

No.  2:19-cv-1685

## AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Andrew Jones ("Mr. Jones"), through undersigned counsel, hereby submits this amended petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 per this Court's order dated July 21, 2022.  Mr. Jones requests that this Court release him from State custody, vacate the State court conviction, and grant him a new trial.  Alternatively, Mr. Jones requests an evidentiary hearing on the claims raised in his amended petition.

### JURISDICTION

1.     This petition challenges the judgment of conviction entered by the Court of Common Pleas in Philadelphia County, Pennsylvania on November 23, 2011, Case No. CP-51-CR-0002562-2009.

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 1331 (federal question); U.S. Const. amend. V (Due Process Clause); and U.S. Const. art. I, § 9, cl. 2 (Suspension Clause).

3.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 2241(d) because Mr. Jones was convicted and sentenced in this district.  Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mr. Jones' claims occurred in this district.

### PARTIES

4.     Petitioner Andrew Jones currently is an inmate at SCI Coal Township, in Northumberland County, Pennsylvania serving a life sentence imposed by Judge Steven R. Geroff of the Philadelphia Court of Common Pleas on November 23, 2011.

5.     Respondent Thomas McGinley, Superintendent of SCI Coal Township, is the state officer having immediate custody of Mr. Jones and is sued in his official capacity.

6.     Respondent The District Attorney of the County of Philadelphia is an individual whose action subjects Mr. Jones to future custody and who is legally authorized to effectuate Mr. Jones' release.

7.     The Attorney General of the Commonwealth of Pennsylvania is an individual whose action subjects Mr. Jones to future custody and who is authorized to effectuate Mr. Jones' release.

### FACTS AND PROCEDURAL HISTORY

A.     Homicide Investigation and Conviction

8.     On August 31, 2008, Bruce Lassiter was shot and killed outside a bar located at Bridge and Jackson Streets in Philadelphia.  Police responded to the scene where a large crowd of

people surrounded the victim outside a bar.  At the scene, police found two shotgun shells, two shotgun wads, and one shotgun slug.

       i.    <u>The Prosecution's "Eyewitnesses" Ashley Crump and Rodney Johnson</u>

9.    During their investigation of the murder, police spoke to multiple witnesses, including Ashley Crump and Rodney Johnson.

10.    Ms. Crump gave two statements to police and testified at the preliminary hearing and trial.  Ms. Crump's story changed with each statement.

11.    Ms. Crump gave her first statement to police at 4:25 am on August 31, 2008, just hours after the shooting.  At that time, Ms. Crump told police that she along with her sisters and her friend Rodney Johnson all were sitting on the steps of her house at the time of the shooting, approximately 30 steps from the incident.  She stated that they all ran into the house upon hearing the first shot.  She told police that she did not see the shooter or anyone shooting at all.  Ms. Crump identified Mr. Lassiter as her "boyfriend."

12.    Ms. Crump gave another statement to police on or around December 5, 2008.  At that time, Ms. Crump changed her story and told police that she did see the shooting and identified Mr. Jones as the shooter.

13.    During the preliminary hearing on March 3, 2009, Ms. Crump testified that Rodney Johnson's mother asked her to provide the statement to the police identifying Mr. Jones as the shooter.  At that time, Ms. Crump identified Mr. Lassiter as her "friend."

14.    Rodney Johnson was the prosecution's other witness.  Mr. Johnson did not speak to police at the crime scene or later on August 31, 2008.  Instead, he spoke to police after returning from a trip to Atlantic City the following evening, September 1, 2008, at 2:10 am.

15.     During his September 1, 2008 meeting with police, Mr. Johnson picked Andrew Jones' photo from a photo spread and identified him as the shooter.  At that time, he told police he was not under the influence of any drugs, alcohol, or medication.

16.     At trial, Mr. Johnson contradicted his earlier statement and admitted that he was "bent," "trashed," and "under the influence" of several substances at the time he gave his statement to police identifying Mr. Jones, including alcohol, marijuana, and Xanax.

17.     At trial, Mr. Johnson also admitted that he "would have signed anything" to get away from the police while he was being questioned.

18.     At the preliminary hearing on March 3, 2009 and during trial, Mr. Johnson also admitted that on the night of the shooting he was intoxicated, having consumed alcohol, beer, marijuana, and PCP.

19.     At trial, Mr. Johnson admitted that he lied to police about his consumption of drugs and alcohol because he was concerned that the truth about his substance use would hurt his miliary career.

20.     Ms. Crump and Mr. Johnson were the prosecution's only eyewitnesses in the trial against Mr. Jones, and the jury convicted Mr. Jones based on their testimony.

21.     In preparing for trial, Mr. Jones' trial counsel, Lee Mandell, Esq., made multiple written requests to the District Attorney's Office for the criminal histories of the civilian witnesses, including a request made just weeks before trial.

22.     Upon information and belief, the prosecution failed to produce a complete criminal history for Rodney Johnson in advance of Mr. Jones' trial.

23.     Upon information and belief, Mr. Mandell did not conduct his own, independent investigation of Mr. Johnson's criminal history in preparation for Mr. Jones' trial.

- 4 -

24.     Mr. Johnson's criminal history includes an arrest and subsequent charges for lying to the police to hinder an investigation of a shooting incident that occurred in July 2006.

25.     Specifically, on July 3, 2006, a detective questioned Mr. Johnson in connection with a shooting in which Mr. Johnson was shot while he was a passenger in a car with two other individuals.  In that interview, the detective asked Mr. Johnson for the names of the other two people in the car at the time of the shooting.  Instead of giving the detective their names, he gave them two false names and a false phone number.

26.     On July 7, 2006, Mr. Johnson admitted to detectives, and provided a written statement admitting, that he had lied to the police in connection with this shooting in order to steer detectives away from the actual individuals involved.  On or around that date, Mr. Johnson was charged with lying to the police and hindering an investigation as a result of his false identification made to the police.

27.     On or about April 27, 2007, the Philadelphia District Attorney's Office agreed to *nolle pros* the charges against Mr. Johnson of lying to the police and hindering an investigation because of Mr. Johnson's then pending reporting orders from the United States Army.

28.     The prosecution failed to produce Mr. Johnson's arrest and subsequent admission that he lied to the police or the decision to not prosecute the charges against Mr. Johnson before or at Mr. Jones' trial.

29.     At trial, Mr. Mandell did not cross-examine Mr. Johnson about or otherwise attempt to impeach him with his history of lying to the police or the benefits that he received from the District Attorney's Office from not prosecuting the charges against him so he could continue to serve in the United States Army.

ii.   The Shotgun Evidence

30.     On September 1, 2008, the day after the homicide, police recovered a shotgun from a nearby house located 5221 Glenloch Street.

31.     Neither the prosecution nor the defense introduced evidence of the shotgun or its recovery at trial.

32.     Firearms expert Kenneth Lay tested two shotgun shells, three shotgun wads, and one shotgun slug from the crime scene.  Another shotgun slug, which police had not originally recovered at the crime scene, was recovered from Mr. Lassiter's body.

33.     Mr. Lay reported that the two shotgun shells had sufficient markings to conclude that they were fired from the same gun and concluded that the gun was the shotgun recovered by police at 5221 Glenloch Street and used in the crime.  Mr. Jones did not reside at that address.

34.     On July 30, 2010, the Philadelphia Police conducted DNA and other forensic testing of the shotgun, which identified fingerprints on the trigger of the shotgun belonging to at least two different people, none of whom was Mr. Jones.

35.     Neither the prosecution nor the defense introduced the DNA evidence at trial.

iii.   Anonymous Tip

36.     On September 1, 2008, the same day that the police recovered the shotgun, the police received an anonymous tip stating that the shooter ran into 5221 Glenloch Street—the same location where the shotgun was found.

37.     This tip is memorialized in a note from someone named "John V." to someone named "Moose," stating that on September 1, 2008, "Mike Gromley from NEDD" received an anonymous tip that the "'word on the street' is that your shooter ran into 5221 Glenloch Street after the shooting."

38.     The prosecution failed to produce the note memorializing the anonymous tip or any other information about the tip at any stage prior to or during Mr. Jones' trial.

39.     On November 23, 2011, a jury in the Philadelphia Court of Common Pleas convicted Mr. Jones of murder in the first-degree and possessing an instrument of a crime.   On that same day, the court sentenced Mr. Jones to life imprisonment on the first-degree murder conviction and a concurrent term of 2 ½ to 5 years' incarceration for his conviction of possessing an instrument of a crime.

B.     Post-Conviction Procedural History

40.     Mr. Jones appealed the judgment of conviction to the Pennsylvania Superior Court, Docket No. 349 EDA 2012.  The Superior Court affirmed the judgment of sentence on December 20, 2012.  *See Commonwealth v. Jones*, 64 A.3d 29 (Pa. Super. 2012).

41.     Mr. Jones further appealed the judgment of conviction to the Pennsylvania Supreme Court, Docket No. 38 EAL 2013.  The Supreme Court denied Mr. Jones' Petition for Allowance of Appeal on June 7, 2013.  *See Commonwealth v. Jones*, 620 Pa. 707, 68 A.3d 907 (2013).

42.     On April 15, 2014, Mr. Jones filed a timely petition for relief with the Philadelphia Court of Common Pleas under Pennsylvania's Post-Conviction Relief Act ("PCRA").

43.     On May 3, 2017, Mr. Jones' PCRA petition was dismissed by the Court of Common Pleas.  Mr. Jones timely appealed the dismissal of his PCRA petition to the Pennsylvania Superior Court.   On October 24, 2018, the Superior Court affirmed the dismissal of Mr. Jones' PCRA petition.

44.     On April 28, 2019, Mr. Jones filed a habeas corpus petition with this Court under 28 U.S.C. § 2254.  This original habeas petition was grounded in a single claim for ineffective assistance of counsel based on his trial counsel's failure to present evidence of the shotgun found

near the scene of the murder with its DNA evidence found on the trigger of that shotgun excluding Mr. Jones as a match.

45.     On April 15, 2020, Magistrate Judge Lynne A. Sitarski issued her Report and Recommendation ("R&R") in which she concluded that Mr. Jones was not entitled to habeas relief and recommended that his petition be denied.  Subsequently, Mr. Jones filed timely pro se objections to Judge Sitarski's R&R.  On September 21, 2020, this Court overruled Mr. Jones' objections, adopted Judge Sitarski's R&R, and denied Mr. Jones' petition for a writ of habeas corpus.  This Court did not issue a certificate of appealability.

46.     On December 29, 2020, Mr. Jones filed with the Third Circuit a pro se application for a certificate of appealability as to this Court's denial of his writ of habeas corpus.  On August 31, 2021, the Third Circuit granted Mr. Jones a certificate of appealability and appointed James Scott Ballenger, the Director of the Appellate Litigation Clinic at the University of Virginia School of Law, as counsel to represent Mr. Jones in his appeal.

47.     On February 17, 2022, the Third Circuit set a briefing schedule and ordered Mr. Jones' opening brief and appendix to be filed by March 29, 2022.

48.     On or around February 23, 2022, while reviewing the Philadelphia District Attorney's Office's file on this matter under its current open records policy, counsel for Mr. Jones discovered the previously undisclosed anonymous note regarding the location to which the shooter ran and from where police later recovered a shotgun.

49.     Accordingly, on March 14, 2022, Mr. Jones alerted the Third Circuit of the newly discovered evidence and moved the Third Circuit for a 30-day extension of time to file his brief and appendix to allow sufficient time to examine the newly discovered evidence and consider the appropriate course of action.

50.     On March 22, 2022, the Third Circuit granted Mr. Jones' motion for an extension until April 28, 2022.

51.     After reviewing more closely the newly discovered evidence and discussing these matters with counsel, Mr. Jones decided to amend and/or supplement his habeas corpus petition to include *Brady* claims based on that newly discovered evidence.  The District Attorney agreed that a remand was the most fair and efficient way to proceed.  Accordingly, the parties jointly moved the Third Circuit to remand the matter back to this Court to allow Mr. Jones an opportunity to propose an amendment to his habeas petition, while staying the appellate proceedings and briefing schedule but reserving its jurisdiction over the appeal.

52.     On July 6, 2022, the Third Circuit granted the parties' joint motion and partially remanded this matter so this Court may consider a motion by Mr. Jones to amend his habeas petition to include *Brady* claims based on newly discovered evidence.

53.     On July 8, 2022, Mr. Jones, through his pro bono counsel, engaged a private investigator, retired FBI agent Vicki Humphreys, to further investigate the facts and circumstances in connection with his habeas corpus petition.

54.     In her investigation, Ms. Humphreys discovered the previously undisclosed criminal history of Rodney Johnson.  As part of the investigation into this issue, Mr. Jones' pro bono counsel brought this issue to the attention of the District Attorney's Office.  The District Attorney's Office provided Mr. Jones with open file discovery regarding Mr. Johnson's prior criminal cases.

55.     On July 21, 2022, this Court entered an order directing Mr. Jones to file a motion to amend his petition on or before August 12, 2022.  Following the filing of three uncontested

motions by Mr. Jones for additional time to file a motion to amend his habeas petition, this Court extended the deadline to November 25, 2022.

56.     Mr. Jones now amends and restates the original version of this petition as set forth herein based on the newly discovered evidence pertaining to Rodney Johnson's criminal history and the anonymous tip to police.

## CLAIMS FOR RELIEF

I.  **GROUND ONE: Mr. Jones was denied due process of law under *Brady v. Maryland*, <u>373 U.S. 83</u> (1932) when the Prosecution failed to disclose the criminal history of eyewitness Rodney Johnson, which would have shown that he had prior criminal charges for lying to the police to hinder an investigation and that he admitted in a written statement to lying to the police.**

57.     Mr. Jones alleges and incorporates by reference paragraphs 1 to 56 above.

58.     The prosecution violated Mr. Jones' right to due process of law under *Brady v. Maryland*, <u>373 U.S. 83</u> (1932) when it failed to produce the criminal history of eyewitness Rodney Johnson.

59.     In preparing for trial, Mr. Jones' trial counsel, Lee Mandell, made multiple written requests to the District Attorney's Office for the criminal histories for the civilian witnesses, including a request made just weeks before trial.

60.     Upon information and belief, the District Attorney's Office never provided Mr. Mandell with complete criminal history for Rodney Johnson in advance of Mr. Jones' trial.

61.     On July 8, 2022, Mr. Jones, through his pro bono counsel, engaged a private investigator, retired FBI agent Vicki Humphreys, to further investigate the facts and circumstances in connection with his habeas corpus petition.

62.     In her investigation, Ms. Humphreys discovered the previously undisclosed criminal history.  As part of the investigation into this issue, Mr. Jones' pro bono counsel brought

this issue to the attention of the District Attorney's Office.  The District Attorney's Office provided Mr. Jones with open file discovery.  A review of the files revealed that Rodney Johnson admitted to lying to the police, that the District Attorney's Office elected not to prosecute these charges, and that the District Attorney's Office never provided Mr. Mandell with Mr. Johnson's admissions and the circumstances of the dismissal of his case at or during Mr. Jones' trial.

63.     Had the prosecution properly disclosed Mr. Johnson's criminal history to Mr. Jones' trial counsel, he would have learned that Mr. Johnson had prior criminal charges for lying to police to hinder an investigation in 2006, that he provided a signed statement admitting that he lied to the police involving the same incident, and that the District Attorney's Office elected not to prosecute the charges because of Mr. Johnson's reporting orders from the United States Army.

64.     Had this information been available to Mr. Jones at the time of trial, Mr. Jones' trial counsel could have questioned Mr. Johnson about his arrest and charges for lying to police in July 2006; about his admission to lying to police, which occurred less than two years before Mr. Johnson provided police with a statement identifying Mr. Jones as the shooter in the Lassiter shooting; and about the benefits that he received from the District Attorney's Office from not prosecuting the charges against him so he could continue to serve in the United States Army.

65.     The failure of the prosecution to comply with its *Brady* obligations and produce this evidence was compounded by the prosecution's attempt to bolster Mr. Johnson's credibility by emphasizing his military service:

> Rodney Johnson comes in here and he has a seven-year military career.  He's 25, which means when he turned 18 this young man joined the military. Now, he may have tried to hide behind some party facade, but let's face it that he is a young man who not only serves his country but that he is trained.

66.     Additionally, Mr. Johnson's credibility issues further undermine the credibility of Ms. Crump's testimony.  Ms. Crump's credibility was already at issue due to inconsistencies in her statements to police.  Had Mr. Jones' trial counsel known of the impeachment evidence against Mr. Johnson, Ms. Crump's second statement to police would have been further impeached by her obvious effort to corroborate the story of Mr. Johnson.

67.     Because eyewitness testimony from Mr. Johnson and Ms. Crump was the only evidence connecting Mr. Jones to the shooting, if Mr. Jones had the opportunity to question Mr. Johnson about his prior lies to police and undermine the credibility of his trial testimony, the verdict would have been different.

68.     Mr. Jones did not raise the issue in Ground One in his direct appeal or exhaust state remedies on Ground One because he was not aware of the facts supporting this claim until recently, as the District Attorney's Office failed to disclose this information to Mr. Jones' trial counsel and only provided the file relating to Mr. Johnson's prior criminal cases in or around July 2022 pursuant to its current open file policy.  Thus, Mr. Jones did not have access to this information until the subsequent investigation described above.

## II.     GROUND TWO: Mr. Jones was denied due process of law under *Brady v. Maryland*, 373 U.S. 83 (1932) when the Prosecution failed to disclose its *nolle pros* of eyewitness Rodney Johnson's criminal charges, implicating his potential bias as a witness.

69.     Mr. Jones alleges and incorporates by reference the paragraphs 1 to 68 above.

70.     The *Brady* violation in Ground One also gives rise to an independent *Brady* claim, where the prosecution failed to disclose its *nolle pros* of eyewitness Rodney Johnson's criminal charges, implicating his potential bias as a witness.

71.     The District Attorney's Office moved forward with the July 2006 criminal charges against Mr. Johnson until April 27, 2007, at which time the prosecution recorded that it would not prosecute without prejudice on the basis that Mr. Johnson was deployed to Iraq.

72.     Had the prosecution properly disclosed Mr. Johnson's criminal history to Mr. Jones' trial counsel, Mr. Jones' trial counsel would have questioned Mr. Johnson regarding his bias in light of the beneficial treatment that he received from the District Attorney's Office previously and would have objected to or responded to the prosecution's closing argument regarding Rodney Johnson's military service.

73.     Because eyewitness testimony from Mr. Johnson and Ms. Crump was the only evidence connecting Mr. Jones to the shooting, if Mr. Jones had the opportunity to question Mr. Johnson about his bias toward the District Attorney's Office for allowing him to continue his military career by deciding not to prosecute him for lying to the police, the verdict would have been different.

74.     Mr. Jones did not raise the issue in Ground Two in his direct appeal or exhaust state remedies on Ground Two because he was not aware of the facts supporting this claim until recently, as the District Attorney's Office failed to disclose this information to Mr. Jones' trial counsel and only provided the file relating to Mr. Johnson's prior criminal cases in or around July 2022 pursuant to its current open file policy.  Thus, Mr. Jones did not have access to this information until the subsequent investigation described above.

III.     **GROUND THREE: Mr. Jones was denied due process of law under *Brady v. Maryland*, 373 U.S. 83 (1932) when the Prosecution withheld exculpatory evidence related to an anonymous tip.**

75.     Mr. Jones alleges and incorporates by reference the paragraphs 1 to 74 above.

76.     The prosecution violated Mr. Jones' right to due process of law under *Brady v. Maryland*, 373 U.S. 83 (1932) when it failed to produce an anonymous tip made to the police on September 1, 2008, the day after the shooting, which reported a location where the shooter went immediately after the shooting.

77.     Failure to disclose this information prevented Mr. Jones from investigating the anonymous tip to identify one or more alternative suspects and from cross-examining the alleged eyewitnesses to establish that he was not the shooter.

78.     Mr. Jones first became aware of the anonymous tip after pro bono counsel James Scott Ballenger was appointed by the Third Circuit Court of Appeals to represent Mr. Jones in connection with the appeal of the District Court's denial of his habeas petition.

79.     Pro bono counsel discovered the tip during a review of the District Attorney's Office's files on or around February 23, 2022, pursuant to the District Attorney's Office current open file policy.  Thus, Mr. Jones only became aware of this tip following the filing of his original habeas petition in this Court.

80.     The inventory of the discovery turned over to trial counsel, Mr. Mandell, does not reflect any disclosure of that tip or of the witness report it recounts.

81.     Thus, upon information and belief, Mr. Jones' trial counsel, Mr. Mandell, did not receive this anonymous tip.

82.     Because the tip revealed the existence of another suspect running into a location unconnected to Mr. Jones and where the shotgun used in the crime was later found, if Mr. Jones had the opportunity to question Officer Gormley, Detective Verrecchio, and Ms. Crump about the anonymous tip, the verdict would have been different.

- 14 -

83.     Mr. Jones did not raise the issue in Ground Three in his direct appeal or exhaust state remedies on Ground Three because he was not aware of the facts supporting this claim until recently, as the District Attorney's Office failed to disclose this information to Mr. Jones' trial counsel and only provided the tip on or about February 23, 2022, pursuant to its current open file policy.  Thus, Mr. Jones did not have access to this information until the subsequent investigation described above.

**IV.    GROUND FOUR: Mr. Jones was denied his right to effective assistance of counsel under the Sixth Amendment of the United States Constitution as a result of his trial counsel's failure to investigate the criminal history of prosecution witness Rodney Johnson.**

84.      Mr. Jones alleges and incorporates by reference the paragraphs 1 to 83 above.

85.     The *Brady* violation in Ground One also gives rise to a corresponding ineffective assistance of counsel claim, where Mr. Jones' trial counsel, Lee Mandell, failed to investigate the criminal history of the prosecution's witness, Rodney Johnson.

86.     Mr. Johnson identified Mr. Jones as the shooter and testified on behalf of the prosecution at trial.

87.      Upon information and belief, Mr. Jones' trial counsel, Lee Mandell, did not independently explore the criminal history for Mr. Johnson in preparation for Mr. Jones' trial.

88.     Mr. Mandell did not cross-examine Mr. Johnson about or otherwise attempt to impeach him with his history of lying to the police at Mr. Jones' preliminary hearing or at trial.

89.     Because eyewitness testimony from Mr. Johnson and Ms. Crump was the only evidence connecting Mr. Jones to the shooting, if Mr. Jones' counsel effectively investigated the criminal history of the prosecution's civilian witnesses and questioned Mr. Johnson about his prior arrest and admission for lying to the police, it would have undermined the credibility of Mr. Johnson's trial testimony and the verdict would have been different.

90.     Mr. Jones did not raise the issue in Ground Four in his direct appeal or exhaust state remedies on Ground Four because the prosecution failed to disclose the information about Mr. Johnson's prior criminal history.  Mr. Jones did not have access to this information until pro bono counsel's investigation in connection with the habeas proceeding and the open file policy of the District Attorney's Office.

## V.   GROUND FIVE: Mr. Jones was denied his right to effective assistance of counsel under the Sixth Amendment of the United States Constitution as a result of his trial counsel's failure to present potentially exculpatory DNA evidence found on the trigger and guard of the shotgun recovered near the crime scene.

91.     Mr. Jones alleges and incorporates by reference the paragraphs 1 to 90 above.

92.     Mr. Jones was denied his right to effective assistance of counsel under the Sixth Amendment of the United States Constitution as a result of Mr. Mandell's failure to present DNA evidence, collected from the shotgun police recovered on September 1, 2008, and later confirmed as the weapon used in the crime, which *excluded* Mr. Jones as the source of the DNA collected from the shotgun trigger and guard.

93.     Because DNA evidence collected from the shotgun used in the crime contained DNA of at least two other suspects but *excluded* Mr. Jones as a source, introduction of such evidence would have excluded Mr. Jones as a suspect and the verdict would have been different.

94.     Mr. Jones has exhausted state remedies on Ground Five.  The claim set forth in Ground Five was raised in Mr. Jones' PCRA petition filed on April 15, 2014, in the Philadelphia Court of Common Pleas, Philadelphia County, which was denied without an evidentiary hearing. Mr. Jones appealed the denial of his petition, and the denial was affirmed by the Superior Court of Pennsylvania on October 24, 2018.

95.     On April 18, 2019, Mr. Jones filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in this Court.  On September 21, 2020, this Court denied Mr. Jones' habeas petition and

did not issue a certificate of appealability.  On December 29, 2020, Mr. Jones filed with the Third

Circuit a pro se application for a certificate of appealability as to this Court's denial of his writ of

habeas corpus.   On August 31, 2021, the Third Circuit granted Mr. Jones a certificate of

appealability on the claim that trial counsel rendered ineffective assistance in failing to present

ballistics evidence concerning a shotgun and DNA testing performed on the evidence and

appointed James Scott Ballenger, the Director of the Appellate Litigation Clinic at the University

of Virginia School of Law, as counsel to represent Mr. Jones in his appeal.

96.      On July 6, 2022, the Third Circuit granted Mr. Jones' request to remand this matter

to this Court in order to amend and/or supplement his habeas corpus petition, while staying the

appellate proceedings and briefing schedule but reserving its jurisdiction over the appeal.

## EXHAUSTION

97.      Grounds One, Two, Three, and Four have not been presented to the highest state

court having jurisdiction.

98.      Mr. Jones was unaware of the facts supporting these claims until recently, after the

Third Circuit Court of Appeals appointed pro bono counsel in February 2022, and for some claims

not until July 2022.

99.      Mr. Jones recognizes the need to exhaust these claims.   For that reason,

simultaneously with this amended petition, Mr. Jones is filing a motion to stay the federal habeas

proceedings so that he may raise these claims at the state level.

## TIMELINESS

100.    The claims set forth above are timely under the Antiterrorism and Effective Death

Penalty Act's limitation period, 28 U.S.C. § 2244(d)(1)(D) because the facts upon which the

amendments are based could not have been discovered previously through the exercise of due

diligence, and the facts cast reasonable doubt that Mr. Jones is guilty of the crimes for which he was convicted.

101.    Mr. Jones seeks to file this amended petition within one year of the discovery of the new evidence, thus satisfying the requirements of 28. U.S.C. § 2244(d).

102.    Mr. Jones understands the need to exhaust his state claims and is simultaneously requesting a stay of this matter to file a second state post-conviction petition.

WHEREFORE, for the foregoing reasons, Mr. Jones respectfully requests that this Court release him from State custody, vacate the State court conviction, and grant him a new trial. Alternatively, Mr. Jones seeks an evidentiary hearing on the claims raised in his Petition for Writ of Habeas Corpus as amended, or any other relief to which he may be entitled.

Dated: November 23, 2022                        Respectfully submitted,


                                               */s/ Michael A. Schwartz*_____
                                               Michael A. Schwartz
                                               Avrohom C. Einhorn
                                               Kaitlin L. Meola
                                               **TROUTMAN PEPPER HAMILTON
                                               SANDERS LLP**
                                               3000 Two Logan Square
                                               Philadelphia, PA 19103
                                               (215) 981-4000
                                               michael.schwartz@troutman.com
                                               avrohom.einhorn@troutman.com
                                               kaitlin.meola@troutman.com

                                               Victoria D. Summerfield
                                               **TROUTMAN PEPPER HAMILTON
                                               SANDERS LLP**
                                               501 Grant Street, Suite 300
                                               Pittsburgh, PA 15219
                                               (412) 454-5000
                                               victoria.summerfield@troutman.com

                                               *Counsel for Petitioner Andrew Jones*

- 18 -

## VERIFICATION

I, Michael A. Schwartz, declare under the penalty of perjury that I represent Petitioner Andrew Jones in regard to this petition and am authorized to sign this verification on his behalf. I have read the information contained in the petition and it is true and correct to the best of my knowledge except for matters stated on information and belief, which I also believe to be true. I understand that a false statement of material fact may serve as a basis for prosecution for perjury.

Dated: November 23, 2022

Michael A. Schwartz

*Attorney for Petitioner Andrew Jones*

19

## CERTIFICATE OF SERVICE

I, Michael A. Schwartz, hereby certify that on November 23, 2022, a true and correct copy of the foregoing Amended Petition For Writ Of Habeas Corpus was filed through the Court's Electronic Case Filing (ECF) System and that the following attorney of record is registered to receive notice of said filing through ECF:

Matthew C. Stiegler
Philadelphia District Attorney's Office
Federal Litigation Unit
Three South Penn Square
Philadelphia, PA 19107
matthew.stiegler@phila.gov

*Attorney for Respondents*

*/s/  Michael A. Schwartz*
Michael A. Schwartz